**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDY SUZANNE KELLER, | ) | CASE NO. 5:23-CV-00189-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Brandy Suzanne Keller ("Keller" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On April 15, 2020, Claimant filed applications for DIB and SSI, alleging a disability onset date of February 26, 2020. (ECF No. 7, PageID #: 41). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On October 4, 2021, an ALJ held a hearing, during which Claimant,

who appeared without counsel, and an impartial vocational expert testified. (*Id.*). On November 17, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 41-55). The ALJ's decision became final on December 1, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 27).

On January 31, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 12, 13). Claimant asserts the following assignments of error:

> (1) The ALJ committed harmful error when he failed to provide Plaintiff a full and fair hearing as he failed to fulfill his heightened duty to an unrepresented Claimant.
>
> (2) The ALJ erred at Step Two of the Sequential Evaluation when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.
>
> (3) The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF No. 9 at 1).

## III. Background

### A. Plaintiff's Complaints

The ALJ summarized Plaintiff's complaints:

> The claimant has reported chest pain, with difficulties breathing (B8E/8), particularly in heat and cold (B5E/3), which she ascribes to chronic obstructive pulmonary disease and coronary artery disease (B3A/1), and which she reports to cause deficits of her ability to lift, bend, stand, walk, and climb (B5E/6), as well as mood swings (B5E/5), anxiety and depression (B3A/1), causing deficits of her ability to concentrate, complete tasks, get along with others (B5E/6), and react appropriately to stressors or changes (B5E/8).

(ECF No. 7, PageID #: 48).

In addition to the complaints noted by the ALJ, the record noted a history of migraine

headaches and rheumatoid arthritis. (*Id.* at PageID #: 306, 789, 949, 1013). At the hearing, Claimant testified that she has "had migraines for 20 years," gets "five or six or so in a month" during which time she "can't function or can't work," and she receives Imitrex injections every month "which pretty much puts [her] in bed for a day or so." (*Id.* at PageID #83-84). She indicated she experiences sensitivity to light, sound, and smells, which causes her to vomit. (*Id.* at PageID #: 84). When she feels a migraine coming on, she takes Rizatriptan "but it still takes several hours before [she] even start[s] to get any kind of break and . . . feel any more comfortable." (*Id.*). She briefly discussed her arthritis in her hands and feet, indicating she had difficulty walking and experienced swelling in her feet and hands to the extent she was unable to bend her fingers. (*Id.* at PageID #: 84-85).

**B. Relevant Medical Evidence**

The ALJ also summarized Plaintiff's health records and symptoms:

In terms of the claimant's alleged obesity, she registered a body weight of 216 pounds on February 27, 2020, which corresponds to a body mass index in excess of thirty-three (B2F/2). In turn, this is consistent with a body weight of 215 pounds, recorded on September 18, 2020 (B10F/16), and a body weight of 218 pounds, recorded on August 4, 2021 (B15F/6). Although no direct medical evidence indicates that the existence of this impairment causes the claimant excess fatigue, or unduly restricts her ability to move about freely within the workplace, I nevertheless identify this impairment as severe for its contributory effects, potentially marked, on the claimant's other severe impairments, particularly those affecting her cardiac and respiratory systems.

In terms of the claimant's alleged cardiac impairment, the claimant sought out her local emergency room in February 2020, where she was, in short order, diagnosed with a non-sinus tachycardia myocardial infarction, catheterized, and operated on for a two-vessel coronary artery bypass graft, on February 26, 2020 (B2F/42). She has since required revascularization of coronary artery lesions, with stents, in February 2021 (B16F/41) and with balloon angioplasty, in June 2021 (B16F/42). While these findings would be consistent with the claimant's allegations of shortness of breath and chest pain, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.

To date, surgical intervention has yielded "excellent" results in restoring blood flow (B16F/42).

The most recent echocardiographic examination indicates stability over time, with the exception of an improved left ventricular ejection fraction (B16F/37). On June 16, 2021, such testing reported mild hypokinesis in the distal anterolateral wall, normal size and function of the right ventricle, no significant valvular stenosis, but trace regurgitation of the mitral, tricuspid and pulmonary valves, a left ventricular ejection fraction of 60-65% with normal left ventricular diastolic function for the claimant's age (B15F/28).

The claimant has been prescribed a regimen of multiple prescription medications, including most recently, anti-coagulants [because she is allergic to aspirin] (B13E/4-5), (B12E/2-7), but medication management and reduction in risk factors remain the primary plan of treatment going forward (B14F/24), (B16F/24-25).

The claimant has been non-compliant with medications, including anti-platelets (B15F/29), and follow-up (B4F/7), and has left against medical advice (B6F/8), (B16F/67), to such an extent that medical non-compliance is now a part of her medical history (B15F/27).

She remained, as recently as June 2021, a three-quarter pack per day cigarette smoker (B16F/55) with a history dating back to age fourteen (B7F/5), frequent marijuana smoking (B6F/5), (B16F/19), all of which are part of risk factors her doctors would have her reduce or eliminate.

Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated August 6, 2020, which indicated a regular rate and rhythm, with normal S1 and S2, no extra sounds, no murmur, rub, click or bruit, with normal peripheral pulses and no edema (B7F/7), or one dated July 30, 2021, which reported a regular rate and rhythm, with normal S 1 and S2, no murmurs, rubs, or clicks, no edema and with normal peripheral pulses (B15F/33).

In terms of the claimant's alleged asthma, there are references to an earlier medical history, but the claimant was diagnosed with asthma on August 6, 2020 (B7F/5). While this finding would be consistent with the claimant's allegations of shortness of breath, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.

Pulmonary function testing, dated October 22, 2020, described diffusion capacity of sixty-six percent of expected, but otherwise normal findings (B11F/10).

The claimant follows a regimen of prescription medications intended to address this impairment (B13E/4-5), (B12E/2-7), used without report of side effects (B3E/5).

She has not required emergent treatment, been hospitalized, or mechanically

intubated for an exacerbation of this impairment, during the period relevant to this claim.

Despite the widespread knowledge of the ill effects of the behavior on any pulmonary-related impairment, she remained, as of June 2021, a three-quarter pack per day smoker (B16F/55), with a history dating to age fourteen (B7F/5).

Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated August 6, 2020, which reported normal, clear breath sounds, lungs normal to percussion, and pulse oximetry of 98% on room air (B7F/6-7), or one dated July 30, 2021, which reported pulse oximetry of 99% on room air (B15F/31), with lungs clear to auscultation and percussion (B15F/33).

. . .

In terms of the claimant's alleged psychological disorders, she was diagnosed with trauma- and stressor-related disorder, anxiety disorder, bipolar disorder, and mild cannabis use, all on June 20, 2019 (B1F/27). While these findings would be consistent with the claimant's allegations of chronic depression and anxiety, the record, when considered as a whole, is not supportive of the contention that the existence of these impairments would be preclusive of all types of work.

The claimant has remained a regular user of marijuana (B6F/5), (B14F/21), (B16F/19). There is no period of extended sobriety, against which to measure her function while using marijuana. In consequence, her substance abuse and addiction disorders are not material to the conclusions announced in this decision.

The claimant follows a regimen of psychotropic medications intended to address these impairments (B13E/4-5), (B12E/2-7). She has been non-compliant with the use and dosage of these medications (B13F/35), and adjustments were made from her re-entry into treatment in April 2020 until October 2020 before the medications had an appreciably beneficial effect (B12F/61). The claimant has generally conceded the medications to be at least partially helpful in attenuating her symptoms since (B13F/3, 35).

The claimant began a regimen of counseling in October 2020 (B12F/3), but the record of this form of treatment stops after a visit dated February 2021 (B13F/1).

Mental status examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated April 1, 2020, which indicated that the claimant presented with casual dress and good hygiene, appropriate behavior, normal speech and language, a logical thought process, normal associations, unremarkable thought content, no suicidal or homicidal ideation, unremarkable cognitive function, normal orientation and fund of knowledge, and good insight and judgment (B12F/44-45), one dated

> February 18, 2021, which indicated that the claimant presented as having a hard time with focus and concentration, but also with casual dress and good hygiene, appropriate behavior, normal speech and language, a logical thought process, normal associations, unremarkable thought content, no suicidal or homicidal ideation, normal memory function and ability to reason in abstract fashion, normal orientation and fund of knowledge, and good insight and judgment (B13F/5-6), or one dated October 7, 2021, which indicated that the claimant presented as having a hard time with focus and concentration, but also with casual dress and good hygiene, appropriate behavior, normal speech and language, a logical thought process, normal associations, unremarkable thought content, no suicidal or homicidal ideation, normal memory function and ability to reason in abstract fashion, normal orientation and fund of knowledge, and good insight and judgment (B13F/38-39).

(ECF No. 7, PageID #: 48-50).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: obesity, asthma, coronary artery disease, status-post non-sinus tachycardia myocardial infarction and coronary artery bypass graft surgery [hereinafter, collectively, the "cardiac impairment"], trauma- and stressor-related disorder, anxiety disorder, bipolar disorder and cannabis use-mild (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant may frequently handle and finger with the bilateral upper extremities; the claimant may frequently stoop, kneel, crouch, crawl, may occasionally climb ramps and stairs but may never climb ladders, ropes or scaffolds; the claimant must be afforded use of supplemental oxygen while working; the claimant must avoid concentrated exposure to humidity, extremes of heat and cold and all exposure to unprotected heights, hazardous machinery, and commercial driving; the claimant is limited to the performance of simple, routine tasks and the making of no more than simple work-related decisions, conducted in a setting that requires no more than occasional interaction with co-workers, supervisors and the public, which setting is routine, in that it contemplates few changes in workplace tasks and duties.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> . . .

6

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 44, 47, 53-55).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in

determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Plaintiff raises three issues on appeal, asserting the ALJ erred by (1) failing to provide a full and fair hearing because he did not fulfill his heightened duty to develop the record given that Claimant was unrepresented; (2) failing to consider all of Claimant's impairments and limitations; and (3) failing to properly consider Claimant's symptoms. Within these arguments, the Claimant also asserts that the ALJ failed to present an accurate hypothetical to the vocational expert, did not provide a "reasonable explanation for the discrepancy" between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), and "erroneously did not

build an accurate and logical bridge between the evidence documenting Plaintiff's new and changed symptoms and the ALJ's decision to deny benefits." (ECF No. 9 at 11-12).

**1. The ALJ did not fail to develop the record.**

Claimant argues the ALJ "failed to provide [her] a full and fair hearing as he failed to fulfill his heightened duty to an unrepresented claimant." (ECF No. 9 at 8). She points to the ALJ's failure to ask her whether she had a chance to review the original or additional exhibits or provide any details about them and his failure to request updated medical records before the hearing even though he had been informed in advance that Claimant had received additional treatment. (*Id.* at 9-11).

The Commissioner responds that "[a] reasonable review of the record in this case shows the ALJ met his duty by properly advising Plaintiff of her right to representation, conducting the hearing in a full and fair manner by asking relevant questions of her, and inquiring about relevant outstanding medical evidence in order to ensure the record was complete." (ECF No. 12 at 11). Regarding the chance to review exhibits, the Commissioner argues that Claimant "never makes any showing that she was denied such access, or even claims such a prejudicial act" and argues that the letter regarding the new evidence indicates she received it. (*Id.* at 12-13).

Claimant is correct that "under special circumstances—when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures—an ALJ has a special, heightened duty to develop the record." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y of Health & Hum. Sevrs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Whether the ALJ failed to fully develop the record must be determined on a case-by-case basis. *Lashley*, 708 F.2d at 1052.

As the Commissioner argues, the circumstances surrounding *Lashley* are vastly different

than those presented here. In *Lashley*, "the claimant was a 79 year-old with a fifth grade education, who after suffering two strokes had trouble reading, writing and reasoning. At Lashley's hearing, the ALJ conducted a superficial examination that failed to heed the claimant's obvious confusion and inability to effectively present his case." *Wilson*, 280 F. App'x at 459 (citations omitted). Here, however, the ALJ informed Claimant of her right to representation, the benefits of representation, the ability to obtain assistance obtaining representation, and his willingness to postpone the hearing to allow her to obtain representation. (ECF No. 7, PageID #: 64-67). Claimant indicated she wished to proceed without representation. (*Id.* at PageID #: 67). During the hearing, Claimant was able to inform the ALJ of additional medical evidence that needed to be obtained and answer the ALJ's questions about her work history, daily activities, and medical treatment without any apparent confusion or difficulty understanding the proceedings. (*See id.* at PageID #: 68-91). As in *Wilson*, while Claimant "chose to proceed without counsel, the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ." *Wilson*, 280 F. App'x at 459. Thus, the ALJ did not fail to adequately develop the record based on Claimant's unrepresented status.

**2. The ALJ erred by failing to consider all of Claimant's impairments.**

Claimant argues the ALJ failed to comply with the requirement of Social Security Ruling ("SSR") 96-8p that an ALJ consider "the limitations and restrictions imposed by all Plaintiff's severe and non-severe impairments" because he "failed to even mention Plaintiff's migraine headaches or rheumatoid arthritis." (ECF No. 9 at 13-14). To the extent Claimant challenges the ALJ's step two determination, the Commissioner takes the position that her argument fails "because it conflicts with well-established Sixth Circuit precedent regarding the sequential evaluation." (ECF No. 12 at 15). Specially, the Commissioner asserts that "because the ALJ

10

found the presence of one or more severe impairments—Plaintiff *prevailed* at step two, which meant that the ALJ continued through the sequential analysis, to step three and beyond." Additionally, the Commissioner argues that Claimant does not provide any proof that her migraines or rheumatoid arthritis were severe or caused meaningful functional limitations. (*Id.* at 16-17). The Commissioner argues "[h]er RFC-based claim must also fail because it seeks to impose an articulation standard on the ALJ that does not exist in the law." (*Id.*). The Commissioner asserts that "there is a difference 'between what an ALJ must consider and what an ALJ must discuss in a written opinion'" and the ALJ satisfied his duty because "[i]n light of Plaintiff's failure to even list headaches among her allegedly disabling symptoms, it was reasonable to conclude that her later testimony as to the functional limitations attributable to migraines was inaccurate" and "despite Plaintiff's failure to show any evidence of functional impairment from [rheumatoid arthritis], the ALJ gave Plaintiff the benefit of the doubt to the extent that he limited her to the least demanding exertional category of work and included handling and fingering limitations in the RFC, even though neither State agency consultant found any functional deficits in either of those areas." (*Id.* at 17-19).

The Court agrees with the Commissioner that because the ALJ proceeded through the sequential analysis, the ALJ's failure to consider Claimant's migraines and arthritis as severe at step two was harmless. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.3d 85, 89 (6th

Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments: "obesity, asthma, coronary artery disease, status-post non-sinus tachycardia myocardial infarction and coronary artery bypass graft surgery . . ., trauma- and stressor-related disorder, anxiety disorder, bipolar disorder and cannabis use-mild." (ECF No. 7, PageID #: 44). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

However, this does not resolve the issue before the Court. "When formulating an RFC, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related

12

restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

The problem here is that there is no indication in the decision that the ALJ considered Claimant's migraines and arthritis *at all* in formulating the RFC. These impairments and the related symptoms are not mentioned at *any* point in the decision despite being indicated in the medical records. The failure to provide any explanation of how Claimant's migraines and arthritis were considered requires remand because this failure "prevents a meaningful review to determine whether substantial evidence supports [the ALJ's] decision." *Hines v. Comm'r of Soc. Sec.*, No. 1:20-CV-01422-JG, 2021 WL 3057090, at *7 (N.D. Ohio June 21, 2021), *report & recommendation adopted*, No. 1:20-CV-1422, 2021 WL 3056316 (N.D. Ohio July 20, 2021); *Miller v. Kijakazi*, No. 2:20-CV-013-DCP, 2021 WL 3494563, at *6 (E.D. Tenn. Aug. 9, 2021) (finding reversible error where the ALJ "did not address Plaintiff's visual impairments at all at step two" and "failed to mention her vision impairments at any point during the RFC determination"). Even *Delgado v. Commissioner of Social Security*, the case cited by the Commissioner to support that there is a difference between "what an ALJ must consider and what an ALJ must discuss in a written opinion," recognizes that the ALJ must "discuss[] the medical and other evidence on the disputed issues and explain[] the basis for his determination of [Claimant's] RFC." 30 F. App'x 542, 547-48 (6th Cir. 2002). Such discussion and explanation did not occur here.

The Court recognizes that Claimant's migraines and arthritis, even when considered with her other impairments, may not require additional restrictions. But the failure to consider these impairments "is a legal error that nevertheless requires remand." *Harrington v. Saul*, No. 3:20-CV-00852-JRK, 2021 WL 3174273, at *10 (N.D. Ohio July 9, 2021), *report & recommendation*

13

*adopted*, No. 3:20-CV-852, 2021 WL 3165836 (N.D. Ohio July 26, 2021).

### 3. The ALJ erred by failing to properly consider Claimant's subjective complaints.

Claimant argues the ALJ failed to properly apply the criteria of SSR 16-3p and failed to find that the intensity, persistence, and limiting effects of Claimant's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis. (ECF No. 9 at 15). She argues the "ALJ failed to articulate any supportable rationale for his finding that Plaintiff's statements and the evidence . . . were not supportive of the fact that she would be precluded from all types of work" and "the decision in this case failed to contain specific reasons for the finding on credibility, was not supported by the evidence in the case record and was not sufficiently specific to make clear to the individual and to any subsequent reviews the weight the ALJ gave to Plaintiff and/or the remainder of the evidence in this matter." (*Id.* at 18-19). The Commissioner responds that "the ALJ provided numerous good reasons to discount Plaintiff's subjective claims of disabling symptoms, and properly reached an RFC determination that considered the entire record." (ECF No. 12 at 23-24).

The evaluation of claimants' subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (nothing that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-7 (2017).

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

14

effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) other treatment for relief of pain and other symptoms; (6) any additional measures to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

As discussed above, the ALJ here failed to discuss Claimant's headaches at any point in his decision. He fails to even mention Claimant's testimony that she suffered from five to six migraines a month; she experienced sensitivity to light, sounds, and smells; and, despite taking

15

medication as soon as she felt a migraine coming on, it often took several hours to obtain relief. While the ALJ provided a detailed analysis of why he felt Claimant's testimony regarding her cardiac impairments, asthma, and psychological impairments were not credible, he wholly failed to address her testimony concerning her migraines. As such, the Court cannot assess how the ALJ evaluated these symptoms and remand is required.

### 4. The ALJ's failure to consider Claimant's migraines and arthritis may impact the hypothetical presented to the vocational expert.

Claimant also asserts that the ALJ failed to present an accurate hypothetical to the vocational expert because he did not consider conditions evidenced by the updated medical records and did not provide a "reasonable explanation for the discrepancy" between the vocational expert's testimony and the DOT. (ECF No. 9 at 11-12). The Commissioner responds that "[t]he expert was not required to be informed of specific medical evidence in the record, nor would such information have made any difference in the testimony provided." (*Id.* at 13). The Commissioner asserts that "the expert's testimony differed from the *DOT* only in that the expert covered information beyond what exists in the *DOT*, not due to any actual contradiction between the two. Such expert testimony does not require an ALJ to perform any further duties to meet the demands of SSR 00-4p." (*Id.* at 14). Claimant replies that "the records received after the hearing demonstrated additional limitations" and "[f]ailing to include these documented symptoms in an additional hypothetical question was harmful error as the ALJ's ultimate RFC was not supported by substantial evidence." (ECF No. 13 at 1).

A vocational expert's testimony is evidence of non-disability only if the hypothetical question to which he responds is an accurate summation of the claimant's medical limitations and vocational factors. *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). "In order for a vocational expert's testimony in

16

response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

As discussed above, there is no indication that the ALJ considered Claimant's migraines and arthritis when crafting the RFC. Consideration of these impairments may result in additional limitations that would need to be incorporated into the RFC and presented to the vocational expert on remand to establish whether Claimant can perform work found in the national economy.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: October 17, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).